ILLINOIS CENTRAL RAILROAD CO. v. FIELDING MCCALIP.

1. RAILROADS. *Passenger depots. Backing trains. Code* 1892, § 3549.

   Code 1892, § 3549, making railroads violating its provisions liable to a party injured within prescribed limits of a passenger depot by a backing train, without regard to mere contributory negligence, was designed to afford protection to all persons within such limits.

2. SAME. *Street crossing. Driver of team. Code* 1892, § 3549.

   One who is injured by a backing train, within the prescribed limits of a passenger depot, while driving a team along a street crossing a railroad track, is entitled to invoke the protection of code 1892, § 3549, making railroads violating its provisions liable to persons so injured without regard to mere contributory negligence.

FROM the circuit court of Lincoln county.

HON. ROBERT POWELL, Judge.

McCalip, the appellee, was plaintiff in the court below, and the railroad company, appellant, was defendant there. The plaintiff was driving a wagon and team of oxen on a street in Brookhaven, which street crosses the tracks of the railroad, and seeing, as he thought, the crossing unobstructed, started to cross, going east, the railroad track extending north and south. There are two tracks, the freight depot being on one, the east side, and the passenger depot on the other, the west, opposite each other. An engine, attached to some freight cars, backed down the track nearest to the freight depot, and struck McCalip's wagon, nearer the freight than to the passenger depot, but within fifty feet of the latter, and McCalip, to escape death, as he thought, jumped from the wagon and received injuries.

There was no watchman at the crossing, and no employe of the railroad preceded the backing cars. There was evidence of contributory negligence on McCalip's part.

The court below gave an instruction for plaintiff, applying § 3549, and refused two instructions asked for defendant, predicated of the idea that the statute was not applicable. From a judgment for one hundred dollars in favor of plaintiff, the railroad appeals. The code section involved is in these words:

"3549. *Backing into or along a passenger depot.*—It shall be unlawful to back a train of cars, or part of a train, or an engine, into or along a passenger depot at a greater rate of speed than three miles an hour; and every such train, part of a train, or engine backing into or along a passenger depot, and within fifty feet thereof, shall, for at least three hundred feet before it reaches or comes opposite to such depot, be preceded by a servant of the railroad company on foot, not exceeding forty nor under twenty feet in advance, to give warning. For every injury inflicted by a railroad company while violating this section, the party injured may recover full damages without regard to mere contributory negligence."

*Mayes & Harris* and *McWillie & Thompson*, for appellant.

Does § 3549, code of 1892, have application, and was it intended to afford protection to persons who were driving teams across railroad tracks at highway or street crossings over such tracks? We think not, and for the reason that, upon the facts, the case is not within but without the intent of the statute. Before the days of Lord Coke it was resolved by the barons of the exchequer that, for the sure and true interpretation of statutes, four things are to be discussed and considered, and the learned of all succeeding ages have approved the wisdom of the resolution. These four things are: (1) The old law, (2) the mischief, (3) the remedy, and (4) the reason of the remedy. It is sufficient in this case to say of the old law that,

beyond all dispute, negligence on the part of one crossing a railroad track which contributed to his injury resulting from collision with cars on the track, was a perfect defense to any suit brought for such injury.

What, then, we next inquire, was the mischief which the section of the code under consideration was intended to remedy? In our judgment it was this: It is and was well known, within the common knowledge of all, that numbers of persons, primarily those intending to become passengers or having business there, congregate at or near passenger depots, especially just preceding the arrival of passenger trains. Such persons are not infrequently restless and impatient; in truth, they are generally so. It is constant practice for them to saunter aimlessly upon and across railroad tracks, and thereby, when trains were permitted to back unawares to such persons into and along such depots, the lives and limbs of persons there assembled were endangered. This manifestly was the evil, and the only one sought to be remedied by the section. We make this even clearer, as we believe, further on, when we come to consider the palpable shortsightedness of the legislature if the statute be construed to be applicable to travelers on streets and highways.

We come now to a consideration of the statute itself, the remedy and its reason. We dare say no living man, without having the concrete facts of a case like McCalip's brought to his mind, would ever, from a mere perusal of the section, think of its application to travelers on highways or streets. Street and highway crossings are not mentioned in the section.

Consider the means of protection provided for the safety of those whom the legislature sought to protect. An employe on foot, not exceeding forty or less than twenty feet in advance of the backing train or car, to give warning. Such an employe on foot could efficiently warn persons assembled about the depot; but how powerless he would be, say twenty-one feet in advance of a backing train, running even three miles an hour, to

save from harm by the cars a team of four yoke of oxen draw-
ing a wagon of lumber, in the act of crossing the tracks! The
means of protection are so inadequate as to indicate, at least,
that travelers on highways and streets, driving teams across
the tracks, were not in legislative contemplation. We see, too,
that the matter of street crossings over railroads, and the pro-
tection of those traveling along them, is provided for by another
section of the code (§ 3551), and that the whole subject-matter
thereof is delegated thereby to the municipal authorities of
cities, towns and villages. We see that the latter section applies
to all street crossings over railroads. And still another section
of the code (§ 3547) provides for highway crossings over rail-
road tracks, and it applies to all such highway crossings. We
must note, too, that in § 3547, the means provided for the pro-
tection of travelers along the highway are commensurate with
their danger. The minimum distance of three hundred yards
is provided, at which distinct signals of the approach of a train
are to be given, thus enabling the travelers to get off the track.
Think of the absurdity of supposing that an employe on foot,
over twenty and under forty feet in advance of the train to give
warning, would afford adequate protection to wagons and teams
and their drivers.

It occurs to us to be unreasonable to think that the legisla-
ture intended special protection to travelers crossing railroad
tracks where the crossings were very near passenger depots
and to deny such protection to travelers at crossings every-
where else. We dare say not one-twentieth of the railroad
crossings of streets and highways in the state, perhaps not
one-hundredth of them, are within fifty feet of a passenger
depot, and there are probably some passenger depots not within
fifty feet of any such crossing.

Can any man give a reason why the legislature, if it were
dealing with the subject of travelers with teams at railroad
crossings, of streets and highways, would make a special rule
and provide an extra and manifestly inefficient means of protec-

tion which could be applied only to a very small proportion of such crossings? We can think of none. The only answer is that the legislature did not have such travelers and such crossings in mind.

If this case be within the letter of the statute, it is not, we submit, within its intention. If it be without the intention of the statute, the court below erred in applying the section to the case.

"A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute is not within the statute, unless it be within the intention of the makers." *People* v. *Utica Insurance Co.*, 15 Johns. (N. Y.), 358–380; Sutherland on Statutory Construction, secs. 428, 429, and authorities cited; Sedgwick on Statutory and Constitutional Law, 233 *et seq.*, and authorities cited.

While the authorities above given, with the cases cited by Sutherland and Sedgwick, amply maintain the rule of construction for which we contend, yet we present to the court the following Mississippi decisions as instances in this state of legislative enactments being construed, not in accordance with the literal terms used, but according to legislative intent. We doubt not but that an industrious exploration of our reports would discover many more of them. *Smith* v. *Allen,* 39 Miss., 469; *Bates* v. *Stokes*, 40 Miss., 56; *New Orleans, etc., R. R. Co.* v. *Hughes*, 49 Miss., 258; *McCarthy* v. *State*, 56 Miss., 294; *Ex parte Gore*, 57 Miss., 251; *Chicago, etc., R. R. Co.* v. *Trotter*, 60 Miss., 442; *Hunter* v. *State*, 62 Miss., 540; *Monroe County* v. *Bell*, 18 So. Rep., 121; *Canton, etc., R. R. Co.* v. *French*, 75 Miss., 939.

Section 444, code of 1880, authorized, if literally construed, the clerks of the circuit courts to receive fees for issuing marriage licenses only in criminal cases, yet no court would have so construed it.

Section 2723, code of 1880, made it a felony to mark the

hog of another in a mark not that of the owner, even though, if we look only to the terms of the section, the marks were made by crossing the animal's back with a piece of chalk or charcoal; and yet the application of the statute to such a case would have been absurd.

Section 2884, code of 1880, if we look alone to the terms of the section, made an unsuccessful effort to destroy a quick child by the administration of drugs, etc., manslaughter, although no person was killed.

Numerous other such instances could easily be pointed out. All of them illustrate the necessity of the court ascertaining and following the intentions of statutes rather than their literal terms.

A parallel question, the analogy of which cannot be disputed, with the one now before the court has frequently arisen upon the construction of statutes requiring those in charge of railroad trains to give warnings as they approach highway crossings. These statutes are broad enough in their terms to confer rights upon all classes of injured persons, and yet the courts generally hold that they are intended for the protection only of travelers on the highway, and not to persons walking along the track or laboring thereon, though they be injured near the crossing. 17 Lawyers' Rep. Ann., 254, note; 15 Am. & Eng. R. R. Cases, note 3, p. 459.

*Cassedy & Cassedy,* for appellee.

The statute, code 1892, § 3549, is plain and embraces two propositions, both the prohibited act and the act required to be done, being for the protection of the public. The legislature, recognizing the danger to the public by rapidly moving trains coming into or along a passenger depot, prohibits the railroad company from running its trains, under those circumstances, at a greater rate of speed than three miles per hour, and, recognizing the further danger of any train backing into or along a passenger de-

pot at any rate of speed, it enjoins upon the railroad company to place a servant in advance thereof to give warning. If a train should back into or along a passenger depot at three miles per hour or less, it would still be necessary for the servant to precede it. The test is not the speed of the train, but the legislature meant that the law should be complied with both as to the prohibition and the injunction at the same time.

In this case it was not contended by the railroad company that a servant preceded the backing cars, or the backing train, or part of a train, as required by the statute. The fact, then, being undisputed, the verdict was necessarily one of the incidents which follow the violation of law. McCalip was not guilty of gross negligence. Maybe he should have waited un- until all the cars had been removed before he attempted to cross the tracks, but he thought, the street being open, that he could cross in safety, and you cannot predicate gross negligence of his acts under the circumstances. When he had arrived at the exact point where the danger presented itself, and some persons were telling him to go on and some to stop, and he then and there made a mistake and went on when he should have stopped, this would not amount to gross negligence on his part; and this is the only evidence which even tends to establish the defense of contributory gross negligence and recklessness. Mere contributory negligence would not defeat a recovery, the other facts, making out a case, being established. We do not think, under the circumstances of this case, that McCalip could be charged with gross negligence or negligence more than "mere" contributory negligence, or recklessness. Desiring to cross the railroad, being upon a public thoroughfare, where he had a right to be, and passing along a public street, where he had a right to pass, he was neither a trespasser upon the company's tracks nor disputing the right with it to use the public streets. If the company had the right to the exclusive use of this street at the point where the railroad

crosses it, then it was incumbent upon it to place some person there who could notify the public when it had finished its business and give the public permission to pass.    The instruction was properly refused.

WOODS, C. J., delivered the opinion of the court.

The evidence before us satisfies us that the appellee has made a case within the letter and spirit of § 3549.   There is no other statute governing injuries inflicted by backing trains, and we cannot conceive how persons—intending passenger, idler or tramp —lounging about the depot grounds, and within fifty feet of a passenger depot, might recover for an injury suffered by the railroad's failure to comply with the requirements of this statute, if he had merely negligently wandered into the street where this accident occurred, and yet a citizen engaged in his ordinary and lawful business, may not recover under identically the same circumstances.   The statute was designed to compel the railroads to observe a new rule of care and watchfulness in backing trains within fifty feet of a passenger depot, and to afford protection to all persons within the prescribed limits.

*Affirmed.*