KING et al. v. ILLINOIS CENT. R. CO.

(Circuit Court of Appeals, Fifth Circuit. May 6, 1902.)

No. 1,129.

**1. RAILROADS—BACKING TRAIN—STATUTORY REQUIREMENTS—PASSENGER DEPOT.**

Under Code Miss. 1892, § 3549, providing that it shall be unlawful to back a train of cars into or along a passenger depot at a greater rate of speed than three miles an hour, and a train backed along such depot within 50 feet thereof shall, for 300 feet before it comes opposite such depot, be preceded by a servant of the railroad company on foot, not exceeding 40 or under 20 feet in advance, to give warning, and that, for every injury inflicted by a railroad company while violating such section, full damages may be recovered, without regard to contributory negligence, the 300-feet limit does not exceed 300 feet from the building, some part of which is used as a passenger depot, notwithstanding there may be a graveled walk extending along the track beyond the building, on which passengers alight from long trains.

**2. SAME—NEGLIGENCE—PLEA OF CONTRIBUTORY NEGLIGENCE—WHEN AVAILABLE.**

Where a man, just after stepping on a railroad track in the yards, was run over by part of a freight train backing at the rate of about eight miles per hour, while the conductor, who was on the rear car, was looking in the opposite direction to see if a switch was properly turned for a passing train, and none of the trainmen saw the man on the track, there was no such wanton recklessness or gross negligence as would render unavailable a plea of contributory negligence.

**3. SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE.**

Where a man in vigorous bodily and mental health, with good hearing and sight, with nothing to obstruct the vision, stepped on and walked along a railroad track on which part of a freight train was backing at a rate of eight miles an hour, and was overtaken and killed, he was guilty of contributory negligence.

**4. SAME—LICENSE TO WALK ON TRACKS—DUTY OF LICENSEE.**

The fact that persons were accustomed to walk along the railroad tracks at the place where an accident occurred, with the knowledge of, and without objection from, the railroad company and its servants, did not relieve such persons from the exercise of ordinary care while on the tracks.

In Error to the Circuit Court of the United States for the Northern District of Mississippi.

C. L. Sivley and T. U. Sisson, for plaintiffs in error.

Edward Mayes and J. B. Harris, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge. On or about the 16th day of June, 1900, Calvin J. King was killed by a train of the defendant in error in the town of Durant, Miss. Between 11 and 12 o'clock noon, Mr. King was walking up the tracks of the railroad, approaching the depot building, and at a point 430 feet from the nearest part of the depot building was struck and killed by a part of a train of cars, consisting of a freight engine with three or four cars attached thereto, backing up a side track designated as the "passing track." Durant is an incorporated town of 2,000 inhabitants. The depot building and its connected platform run north and south. The main line of the railroad lies east of the depot, and next east of the main line lies the track called the "passing track," on which the accident occurred. This is a very long side track, extending a mile or more south of the depot building, as well as far north of it. It is perfectly straight, and located on substantially level ground, with no natural object to obstruct the view throughout its length. East of the passing track, and south of the depot, was a coal chute. East of the coal chute there was a switch line called the "loop," which connected with the passing track both north and south of the coal chute. West of the main line, and below or south of the depot building, was a switch line called the "scales track," and still west of the scales track was another switch line, called the "platform track," both located south of the freight depot building. Both of these lines of track are three or four hundred yards long, extending across Cedar street, and across another street further south. They run parallel with the main line. The east rail of the scales track is 9 feet from the west rail of the main line, and the east rail of the platform track is 23 feet from the west rail of the main line. The space between these tracks is clear throughout their whole length, and the gravel walk referred to later occupies all the space between the east rail of the scales track and the west rail of the main line to the engine room south of the coal bin, which is 90 feet south of the place where Mr. King was killed. The business part of the town of Durant, west of the railroad, extends to the north and south of the depot building, and Cedar street crosses the railroad at right angles five or six hundred feet south of the depot building. Along the line of the railroad, and on each side of its right of way, there are settlements south of Cedar street, and on the east side of the right of way is a fairly good sidewalk. The proof shows that persons settled in that locality and others were in the habit of passing up north along the railroad tracks to a public crossing just north of the depot building, and of going thence to the business portion or other part of the town lying west of the railroad. The engine which was propelling the cars described as backing northward on the passing track belonged to a freight train which had arrived at Durant a short time before 11 o'clock, and had stopped on the passing track north of the depot building, where the engine was disconnected from the train, and proceeded south on the same track to the coal chute, where it coaled, and then proceeded south to a connecting-link track between the passing track and the main line, on which it passed to the main line, and then,

in due course, backed off the main line onto a track west of the main line, and took up three or four freight cars, at least one of which was a box car, and pulled them onto the main line, and thence, by the connecting link, backed them onto the passing track, and was proceeding to back along the same to the part of the train which had been left on that track north of the depot building. There was no evidence tending to show that the engine or the cars it was pushing had been on the loop track, or on any track east of the passing track. The evidence is ample, clear, and uncontradicted that the engine and cars which ran over the deceased had not been on any of the tracks east of the passing track. Mr. King was seen by one witness approaching the railroad from the west on Cedar street at the point where it crosses the railroad. He turned to the north, walking for a few steps on the main line, then proceeding a few steps more between the main line and the passing track, then stepping onto the passing track, and proceeding north on it until he was struck and killed by the backing cars and engine. At this same time another south-bound freight train was coming down the main track, and the engine pulling it was within four or five car lengths of Mr. King, when he stepped off of the main track onto the space between it and the passing track, and stepped onto the passing track about the time the engine of this south-bound train got opposite him. A witness called by the plaintiff, named Cal Turner, testified that he lived in Durant, south of the depot; that on the day the accident occurred he had started home, and was walking slowly along the east side of the main line of the railroad, having crossed over to that side because he did not want any one to see him get on the freight train, which was then moving southward, and on which he wished to ride to his home, which was the fourth house south of Cedar street; that when the engine of the south-bound freight train was about even with him, at a point about 100 feet south of the public crossing north of the depot building, he saw Mr. King coming toward him from the south; that at the time he first saw Mr. King there was no train south of witness on the track on which Mr. King was killed; that witness did not get on the train, because before the caboose reached him the train was going too fast for him to get on with safety. He continued walking south along the track, and had, at the time of the collision, proceeded to a point about 200 feet north of where it occurred. By this time nearly all of the south-bound train had passed him. He thinks there were four cars attached to the engine which ran over Mr. King, but does not remember whether they were all box cars or not. He did not see the backing train before it struck Mr. King. His attention was attracted by hearing some one hollo, and then he saw Mr. King under the front part of the box car. When witness first saw Mr. King, he was walking north on the main line. Mr. King got in between the main line and the other track when the engine was about four or five lengths from him. This witness did not see or hear any signals given by the backing train, did not hear any bell ring or whistle blow on that train, but did hear signals from the train that was on the main line, going south. Says the backing train was moving at the rate of six or eight miles an hour. Other uncontradicted evidence shows that the backing train,

or part of the train, had on it an engineer, a fireman, a brakeman, and the conductor of the train to which the engine belonged. They all testify that the engineer, the fireman, and the conductor were keeping the customary lookout; that the required signals were being given; that the most northern one of the cars in the backing train was a coal car; that the conductor was seated on the southeastern corner of this car, looking north. The conductor testified that just at that instant he was noticing to see if the switch connecting the link track, over which they had passed from the main track, was properly thrown, so that the south-bound train could pass on safely; that he did not see Mr. King. The engineer and the fireman both testified that they did not see him; did not know that he was on the track until they had passed over him, and their attention was challenged by the holloing, which at first they could not locate; that, at the instant they did ascertain what had been done, they stopped the backing train; that it was going at a rate not exceeding four or five miles an hour, and they did not know there was any occasion for stopping until after they had passed over the man.

The plaintiffs are the surviving wife and children of the deceased. Their action is for damages, in the usual form, charging that the death was occasioned by the negligence of the defendant's servants. The defense is a general denial of liability; that the company and its servants were not negligent; and, further, the company pleads negligence on the part of the deceased, which caused him to receive the fatal injury. To meet the plea of contributory negligence, the plaintiffs rely on section 3549 of the Mississippi Code of 1892, which is as follows:

"It shall be unlawful to back a train of cars, or part of a train, or an engine into or along a passenger depot at a greater rate of speed than three miles an hour; and every such train, part of a train, or engine backed into or along a passenger depot and within fifty feet thereof, shall for at least 300 feet before it reaches or comes opposite to such depot be preceded by a servant of the railroad company on foot, not exceeding forty nor under twenty feet in advance, to give warning. For every injury inflicted by a railroad company while violating this section, the party injured may recover full damages without regard to mere contributory negligence."

When evidence on behalf of the plaintiffs and on behalf of the defendant had been fully heard, and the hearing of evidence closed, the defendant, by written motion, requested the court to instruct the jury peremptorily to find for the defendant, which the court did, and there was a verdict and judgment in accordance therewith. The only error assigned which we deem it proper to notice is stated as follows: "The court erred in granting the peremptory charge asked by the defendant below wherein the jury was instructed to return a verdict in favor of the defendant below."

Considering the case without reference to the provisions of section 3549 of the Mississippi Code of 1892, it seems to us to be too clear for controversy that, while there is proof tending to show some degree of negligence upon the part of the defendant company, there is manifestly no proof tending to show such wanton recklessness or gross negligence as would render unavailable a plea of mere contributory negligence on the part of the deceased. It seems also

to us to be beyond controversy, and manifest from the proof, that the deceased was negligent in a manner that contributed directly to the receiving of the fatal injury. Deceased was not yet 50 years of age. Had been up to that time a man in vigorous bodily and mental health. His hearing and sight were good. It was midday. The track was straight and level, with no obstruction thereon. The backing train was more than 100 feet long, and, at the most, its rate of speed did not exceed eight miles an hour. It therefore be- came necessary for the trial court to decide whether the statute referred to applied to the conduct of the parties at the point where this injury was inflicted. The trial court was not charged with the impossible duty of giving the term "passenger depot" an abstract definition, that would mean the same thing wherever that term would be used or sought to be applied, or the almost equally difficult duty and useless labor of giving it a relative definition ad- justed to all possible hypothetical cases. It was the duty of that court to determine by its construction of this section of the statute whether at the time and place when and where King was killed the defendant was backing a train of cars, or part of a train, or an engine, into or along a passenger depot. Some other provisions of the same Mississippi Code may be profitably considered in con- struing the language of section 3549:

"Sec. 4302. Necessary Depots to be Maintained. Every railroad shall es- tablish and maintain such depots as shall be reasonably necessary for the public convenience, and shall stop such of the passenger and freight trains at any depot as the business and public convenience shall require; and the commission may cause all passenger-trains to permit passengers to get on and off in a city at any place other than at the depot, where it is for the convenience of the traveling public. And it shall be unlawful for any rail- road to abolish or disuse any depot when once established, or to fail to keep up the same and to regularly stop the trains thereat, without the consent of the commission.

"Sec. 4303. Regulations for Passenger-Depots. The commission shall es- tablish such rules and regulations for the arrangement and management of passenger-depots as will secure the comfort of passengers, and it shall cause a copy thereof to be posted in each passenger depot or reception-room.

"Sec. 4304. Bulletin-Boards. It is the duty of every railroad to keep con- spicuously placed, as the commission shall direct, and of the form and size prescribed by it. at each reception-room or depot, a bulletin-board," etc.

"Sec. 4305. Commission to Visit Stations, etc. The commission shall from time to time, as far as practicable, visit all stations on the various lines of railroad, and investigate the manner in which bulletin-boards are posted and kept. how reception-rooms are arranged and kept," etc.

"Sec. 4309. Location of Station-Houses. The commission may designate the site or location of any new building or station-house which may be or- dered erected in cases where the site selected by the railroad's officials is in- convenient or inaccessible; but every depot must be located with due regard to the interest of the railroad and the public convenience.

"Sec. 4310. Union Passenger-Depots. The commission, whenever the public convenience may require it, shall cause union passenger-depots and transfer- stations to be erected, and may designate the dimensions and sites thereof," etc.

"Sec. 4312. To Inspect Depots; Reception-Rooms. It is the duty of the commissioners to inspect the depots of all railroads from time to time, and of the commission to require comfortable and suitable reception-rooms for passengers, separate for the races, and, if it deem proper. for the sexes; and it may require such additions to or alterations in passenger-depots or station-

houses as may be necessary, in its judgment, to secure ample, comfortable, and suitable accommodations for all passengers. * * *"

The supreme court of Mississippi has decided that section 3549 was designed to afford protection to all persons within the prescribed limits. Railroad Co. v. McCalip, 76 Miss. 360, 25 South. 166. The case just cited is the only one reported in which the supreme court of Mississippi has had occasion to consider and construe section 3549; and that case did not involve the question which now engages us, because in that case the injury was received by the plaintiff while attempting to cross the railroad track on a public street at the north end of. the depot building, and was manifestly within the space limitations of the statute, whether or not the words "passenger depot" should be held to relate to the building alone. We note in the reporter's statement of the case: "The depots are situated opposite each other. The freight depot is on the east side of the tracks and the passenger depot is on the west side." In that case, as in this, the passenger depot seems to have fronted on a public crossing just to the north of the depot building. Here, in the case we are considering, both of the waiting rooms of the passenger depot are at the extreme north end of the structure, and the two rooms take in the width of the building. They open to the north. There is a rock deposit all around that end of the building on the north end of it. Immediately behind or south of the sitting rooms is the agent's office, and immediately behind or south of the agent's office is the baggage room, and immediately south of the baggage room is the freight warehouse. On the east and west sides, and immediately south of the freight warehouse, is a platform. The platform immediately south of the freight warehouse is as wide as the whole building, or any part of it. Then there is a cut-off down east, and a narrow transfer platform running south some distance, with a shed over it. This is used to transfer cars. The other platform is used for depositing parcels, such as boxes, lumber, or anything. It is not used for passenger purposes, and is about 3 feet off the ground,—too high for a man to get on, except he go to the end, and come up by the steps. The part of the building used as a freight warehouse, not including its platforms, extends north and south along the main-line track for a distance of 100 feet; and the part used for sitting rooms, agent's office, and baggage room extends about 60 feet along the line; making the whole length of the depot building, excluding from consideration the platforms, 160 feet. The point at which Mr. King was struck is 425 feet from the southeast corner (its nearest part) of the freight-depot building, is 395 feet from the southeast corner of the main platform around the freight warehouse, and is 525 feet from the extreme south end of that part of the building used in connection with passengers, and is only 237 feet from Cedar street crossing. As already mentioned, between the west rail of the main-line track and the east rail of the scales track a 9-foot space, uniform in width, was covered with a good gravel walk, extending more than 600 feet south from the most southern point of that part of the depot building used for passengers, and extends 90 feet beyond the

point at which the collision occurred. A like gravel walk extends north from the depot building about 600 feet; making, including the length of the building itself, a stretch of more than 1,350 feet covered by the southern and northern extensions of this gravel walk. It was put down for the convenience of receiving and discharging passengers on or from cars, in connection with any of the long through trains while standing on the main line, and was given the length it has in order to accommodate the longest trains going north or south on the main line. At the point where the collision occurred, passengers may have been received or discharged, and certainly were often received or discharged on such cars at points not many feet north of the place where the injury was received.

The contention of the plaintiffs is that, within the meaning of the terms of section 3549, every point on this extended gravel walk, throughout its whole length, is a part of the passenger depot, and that the language of the statute required that for a distance of 300 feet further south, and of 300 feet further north, from the respective extremities of this gravel walk (that is, for a distance of 1,950 feet), the railroad company, in backing a train of cars, or part of a train, or an engine, along any of its tracks located and running within 50 feet of this gravel walk, should not run at a greater rate of speed than three miles an hour, and that it should have every such train, part of train, or engine preceded by a servant of the railroad company, on foot, not exceeding 40 or under 20 feet in advance, to give warning. On the other hand, it is contended by the railroad company that the plain meaning of the language of the section in question requires that the words "a passenger depot," as used in that section, should be construed to apply to the building used for such depot in cases where there is a building to locate the depot.

We have noticed, in section 4302, that the railroad commission of the state of Mississippi "may cause all passenger trains to permit passengers to get on and off in a city at any place other than at the depot, where it is for the convenience of the traveling public." It is not necessary to hold that there could not be a passenger depot on a railroad without having in connection with it, and as its most conspicuous feature, some character of a house or building. But it seems to be very certain, from the comprehensive provisions of the Code of Mississippi defining the powers and duties of the railroad commission of that state, that no railroad in that state would be permitted to use such a passenger depot. While, in a certain sense, the term "passenger depot" embraces more than the mere building, in undertaking to survey and fix the limits of the space reservation made by this statute it is necessary that we should look for a reasonably definite point as a place of beginning. The limits are that the line of track must run within 50 feet of the passenger depot, and that a train, or part of a train, or engine, backing on this track into or along a passenger depot, shall, for at least 300 feet before it reaches or comes opposite to such depot, be preceded by a servant of the railroad company, etc., and be run at a rate of speed not greater than three miles an hour. Counsel for the plaintiffs calls to our attention section 3551 of the Code, which

concludes with this sentence: "A failure to observe this and the four last preceding sections shall cause a railroad company to be liable to a fine of fifty dollars for each offense;" and counsel say truly that "this penalty is therefore imposed for the violation of sections 3547, 3548, 3549 [the section we are construing], 3550, and 3551." The last sentence of section 3549 is also highly penal in its character: "For every injury inflicted by a railroad company while violating this section the party injured may recover full damages without regard to mere contributory negligence." Following the recognized canons for the construction of such statutes, and keeping well in mind that the purpose of this statute is to provide for the preservation of human life, we are unable to give the words "a passenger depot," as used in the section, the construction contended for by the plaintiffs' counsel, and are fully persuaded that in this particular case the language "a passenger depot" must be limited at least so as to include, at most, only the whole of the building, a part of which is used in connection with the passenger service, and therefore that the restrictions and limitations of the section were not laid upon the defendant at the time and place when and where the collision occurred which occasioned the death of Mr. King. We think the contention of the plaintiffs' counsel that Mr. King was a licensee on the defendant's tracks at the point where he was struck in no way favorably affects the plaintiffs' case. It is only claimed that he and others were in the habit of passing north along these tracks, between the rails of the different tracks, or between the different tracks, indifferently, without confining themselves to the gravel walk, and that this was known to the defendant and its servants, who are not shown to have made any effort to prevent it. The fact that such use of the tracks was permitted, either passively or expressly, would not relieve persons availing of it from the exercise of ordinary caution, and, so far from charging the servants of the company with any additional degree of care in operating its trains at midday, would have a reasonable and natural tendency to dull their attention in taking notice of people passing about or along the tracks at such a time, on account of its being a common occurrence, and the persons usually there being those who were accustomed to the place, and having knowledge of its dangers, and trusting in their own capacity to avoid injury in such use by timely stepping off a track on which a train, or part of a train, or engine was approaching.

From the most careful consideration of the whole proof, and of the language of section 3549, and of the other parts of the statutory law of Mississippi to which we have been referred, we are satisfied that the plea of contributory negligence was well taken, and was established by uncontradicted testimony, and that the trial judge did not err in directing a verdict for the defendant.

The judgment of the circuit court is affirmed.